## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HELEN V. SOSSO, ) | Bankruptcy No. 12-21641 – CMB |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| MELBOURNE WANN, ) | Adversary No. 12-2267 – CMB |
| ) | |
| Plaintiff, ) | Related to Doc. Nos. 39 & 40 |
| ) | |
| v. ) | |
| ) | |
| HELEN V. SOSSO, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

The matters before the Court are Plaintiff Melbourne Wann's (1) Motion to Compel Further Deposition Testimony Directed to Joseph W. Nocito, Jr. ("Motion to Compel Mr. Nocito") and (2) Motion to Compel Documents and Further Deposition Testimony Directed to Mark Sosso ("Motion to Compel Mr. Mark Sosso") (hereinafter, collectively, referred to as "Motions to Compel").[1] The Motions to Compel assert that Mr. Nocito and Mr. Mark Sosso improperly invoked the Fifth Amendment privilege against self-incrimination at their respective

---

[1] The Motions to Compel arose within the above-captioned adversary proceeding, which was commenced pursuant to 11 U.S.C. §523 to determine the dischargeability of a debt. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. The proceeding is core pursuant to 28 U.S.C. §157(b)(2)(I) as are the discovery matters which the Court addresses herein. However, if the District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that these matters are not core, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

depositions. The Motion to Compel Mr. Mark Sosso additionally asserts that he improperly invoked the Fifth Amendment privilege in response to requests for document production. Both Mr. Nocito and Mr. Mark Sosso filed responses in opposition to the respective Motions to Compel. For the reasons stated herein, this Court finds that Mr. Nocito and Mr. Mark Sosso properly invoked the Fifth Amendment privilege, and the Motions to Compel are denied.

**I.     Background and Procedural History**

On March 30, 2012, Helen V. Sosso (hereinafter "Debtor") filed a voluntary petition for relief under Chapter 7. On July 13, 2012, Melbourne Wann commenced the above-captioned adversary proceeding against Debtor by filing the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523. The Motions to Compel arose within the adversary proceeding, and for purposes of background only, the Court discusses the allegations within the Complaint and Answer. No findings with respect thereto are made by the Court at this time.

As set forth in the Complaint, the debt at issue resulted from a $100,000 loan made to the Debtor, her two sons, Mr. Mark Sosso and Mr. Scott Sosso (collectively, the "Sossos"), and Sosso Homes, LLC ("Sosso Homes"). The Sossos were members and/or managers of Sosso Homes and operated and controlled the entity. The purpose of the loan was to provide additional funds for the construction of a residential home by Debtor and Sosso Homes on property owned by the Sossos (the "Property"). The loan was to be repaid along with a percentage of the net sales price either upon the sale of the Property or a date certain if the sale had not occurred by that time with the remainder due upon the subsequent sale of the Property. The loan was to be secured by a second mortgage lien against the Property in favor of Mr. Wann, subordinate only to the lien of Liberty Savings Bank, which provided a construction loan for the project. The

2

mortgage was to be recorded by the Debtor. Notwithstanding the agreement, the Debtor did not execute the note ("Wann Note") and mortgage ("Wann Mortgage") and failed to record the Wann Mortgage. Furthermore, the Complaint avers that the Property was subsequently completed and sold to Mr. Nocito for $3 million. Although the sale proceeds were sufficient to pay the Liberty Savings Mortgage, customary closing costs, and the entire indebtedness due to Mr. Wann, no proceeds were paid to Mr. Wann. Rather, the Sossos received $1,276,705.40 from the sale. Thus, the indebtedness remains due and owing. Mr. Wann contends that the debt is nondischargeable pursuant to §523(a)(2)(A) and (6).

In response, Debtor filed her Answer and Affirmative Defenses. Debtor contends that the construction project was that of Sosso Homes, not the Debtor. Furthermore, Sosso Homes, rather than the Sossos, owned the Property and obtained the loan from Liberty Savings Bank. According to the Debtor, Mr. Mark Sosso requested the loan from Mr. Wann, which was made to Sosso Homes and the Sossos. However, the Debtor contends that, because neither the Debtor, Mr. Scott Sosso, nor Mr. Mark Sosso owned the Property, none of them could provide a mortgage on the Property. The Debtor did not execute the Wann Note or Wann Mortgage and denies ever agreeing to record the Wann Mortgage. At the closing, the Project was incomplete, and the actual consideration exchanged was not $3 million. Rather, Mr. Nocito tendered $1.9 million to Sosso Homes pursuant to an agreement with Mr. Mark Sosso. Furthermore, due to the fact that the project was incomplete, Sosso Homes refunded $458,000 to Mr. Nocito as costs for completion. Debtor contends she did not participate in the negotiations that led to sale and/or closing and denies that she or her sons received proceeds from sale of the Property.

During the course of discovery, several matters were brought before this Court. On October 16, 2012, Mr. Wann filed a Motion to Compel Deposition and Responses to Subpoena

3

Directed to Joseph W. Nocito, Jr. No response was filed and an Order granting said Motion was entered on November 7, 2012. Upon consent of Mr. Nocito and Mr. Wann, an Order was entered on November 27, 2012, requiring Mr. Nocito to attend and testify at a deposition and providing for Mr. Nocito's production of information relating to the sale, transfer, and purchase of the Property.

On November, 14, 2012, Mr. Wann filed his Motion to Compel Deposition and Responses to Subpoena Directed to Mark Sosso and Motion to Compel Deposition and Responses to Subpoena Directed to Scott Sosso. Upon consent of Mr. Scott Sosso, Mr. Mark Sosso, and Mr. Wann, an Order was entered on December 4, 2012, requiring Mr. Scott Sosso and Mr. Mark Sosso to attend and testify at depositions and providing for production of information relating to the sale, transfer, and purchase of the Property.

Thereafter, the depositions of Mr. Nocito and Mr. Mark Sosso were taken. With respect to a number of questions, both Mr. Nocito and Mr. Mark Sosso invoked the Fifth Amendment privilege against self-incrimination. In addition, Mr. Mark Sosso asserted the privilege with respect to requests for production on the basis that production itself would be testimonial in nature. As Mr. Wann contests the applicability of the privilege, the instant Motions to Compel were filed. Mr. Nocito and Mr. Mark Sosso filed responses in opposition, and a hearing was held on April 2, 2013.

Following the hearing, the parties were given an opportunity to submit briefs prior to the Court ruling on the Motions to Compel. Mr. Nocito and Mr. Mark Sosso sought to file a reply brief only if a brief was submitted by Mr. Wann. On April 10, 2013, Mr. Wann advised the Court that he would not be filing a brief and requested that the issues presented be taken under advisement. Accordingly, the matters are now ripe for decision.

4

**II.     Discussion**

The Fifth Amendment provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" In recognition of the significance of the right this provision is intended to secure, the Supreme Court directs the provision to be given liberal construction. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951). Accordingly, "[t]he privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* Furthermore, "[t]he privilege extends to civil proceedings, and it applies not only at trial, but during the discovery process as well." *Burt Hill, Inc. v. Hassan* (*Burt Hill I*), No. 09-1285, 2009 WL 4730231, at *1, 2009 U.S. Dist. LEXIS 113144, at *3 (W.D.Pa. Dec. 4, 2009).

Despite the liberal interpretation, invocation of the privilege is not without limitation. It is "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer[,]" and must be based upon more than the witness' mere say-so. *Hoffman*, 341 U.S. at 486. The burden of sustaining the privilege, however, is necessarily low as otherwise the witness "would be compelled to surrender the very protection which the privilege is designed to guarantee." *Id.* "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*. at 486-87. Thus, the burden on the witness invoking the privilege is to show nothing more than "the likelihood of danger" in answering the questions at issue. *See American Cyanamid Co. v. Sharff*, 309 F.2d 790, 794 (3d Cir. 1962).

A court's analysis begins with a determination of whether there appears to be a conceivable possibility that the witness invoking the privilege could be linked to a crime. *Id.* If so, the court turns to whether answers to the questions asked could furnish a link in the chain of evidence necessary to prosecute the witness for such a crime. *Id.* at 794, 797. The existence of pending criminal charges is not a prerequisite to invocation of the privilege and a court should not attempt to speculate as to whether prosecution will occur once it has been determined that answering the questions may tend to incriminate the witness. *Burt Hill I*, 2009 WL 4730231, at *1, 2009 U.S. Dist. LEXIS 113144, at *4. In determining the propriety of a witness' silence, a judge may rely upon her own personal perception of the case as well as facts in evidence. *Hoffman,* 341 U.S. at 487. However, if the court determines that a witness is clearly mistaken and his silence is not justified, the court may require him to answer. *Id*. at 486.

In *Hoffman v. United States*, the Supreme Court applied the standard set forth therein and addressed the invocation of the privilege by an individual, Samuel Hoffman, who was subpoenaed to appear and testify in a grand jury investigation. *Id*. at 480-81. The federal grand jury was convened to investigate numerous federal offenses and conspiracy to commit such offenses. *Id.* at 481. Hoffman, who possessed a known criminal record, refused to answer certain questions relating to his occupation and questions regarding his contact with an individual, who had also been subpoenaed but failed to appear. *Id.* at 481, 487-88. Based upon the setting and circumstances, it was not perfectly clear that answering the questions could not possibly have the tendency to incriminate Hoffman as the Court recognized that (1) the occupation of some individuals involves the evasion of federal criminal laws and (2) acknowledging contact with and the whereabouts of a fugitive witness could disclose that Hoffman engaged in prohibited activity.

6

*Id.* 487-88. Thus, it is clear that questions which by themselves appear to be innocuous are not necessarily so when viewed in the context of a particular case.

The protections of the Fifth Amendment, in certain circumstances, extend beyond protection from compelled testimony at a deposition, grand jury proceeding, or trial. The act of producing documents may also have a compelled testimonial aspect. *United States v. Hubbell*, 530 U.S. 27, 36 (2000). "[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *Id*. at 35-36. However, the Supreme Court recognized that production of information may be considered testimonial in nature:

> "[T]he act of production" itself may implicitly communicate "statements of fact." By "producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." Moreover, as was true in this case, when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents. Whether the constitutional privilege protects the answers to such questions, or protects the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating.

*Hubbell*, 530 U.S. at 36-37 (footnotes omitted). Therefore, when analyzing the invocation of the Fifth Amendment privilege in the context of document production, a court must focus on whether the act of production is, in itself, testimonial in nature and incriminating on that basis. Whether production is testimonial depends upon the particular facts of the case. *See Burt Hill, Inc. v. Hassan* (*Burt Hill II*), No. 09-1285, 2010 WL 55715, at *2, 2010 U.S. Dist. LEXIS 43, at *7 (W.D.Pa. Jan. 4, 2010). If the issue is simply one of surrendering information and the existence and location of such information is a foregone conclusion, then the testimonial privilege is inapplicable. *Burt Hill II*, 2010 WL 55715, at *2, 2010 U.S. Dist. LEXIS 43, at *7-8.

With this standard in mind, the Court turns to the Motions to Compel. In doing so, this Court is particularly cognizant of the fact that Mr. Nocito and Mr. Mark Sosso are non-party witnesses. As such, the Court was even more swayed by their arguments regarding the applicability of the Fifth Amendment privilege.[2]

Mr. Nocito

The Motion to Compel Mr. Nocito asserts that he improperly refused to testify to virtually all areas of questioning on the basis of his Fifth Amendment privilege against self-incrimination. In particular, the areas of questioning were characterized as follows:

> (1) the companies Mr. Nocito has owned, had an interest in, or had a relationship with;
> (2) the cases in which Mr. Nocito has been previously deposed;
> (3) if Mr. Nocito has ever been convicted of a crime;[3]
> (4) if Mr. Nocito obtained any financing to purchase the Property and the purchase price of the Property;
> (5) the sale, transfer and purchase of the Property;
> (6) the condition of the Property and the nature of the improvements erected thereon;
> (7) Mr. Nocito's relationship with Sosso Homes; and
> (8) Mr. Nocito's knowledge of Mr. Wann's involvement or investment in the Property.

---

[2] In contrast, the Court notes that a different conclusion may be reached when a debtor invokes the privilege. *See Melarango v. Ciotti* (*In re Ciotti*), 442 B.R. 412, 415 (Bankr.W.D.Pa.2011) (stating that "[a] debtor seeking relief from his debt obligations by filing a petition under the Bankruptcy Code does so willingly and voluntarily and is not entitled to as much consideration in being compelled to testify as would be another witness who has no interest in the proceeding").

[3] As to this question, the Court notes that the Fifth Amendment privilege may be inapplicable. However, to compel Mr. Nocito to reappear and answer this question would be an unnecessary hardship, especially as the answer could be ascertained upon review of the public record.

8

As a result, Mr. Wann seeks an order compelling Mr. Nocito to reappear and fully testify to all areas of questioning to which he incorrectly asserted his privilege applied.

In response, Mr. Nocito asserts, and the Court agrees, that his invocation of the Fifth Amendment privilege is appropriate as the Complaint alleges Mr. Nocito's involvement in a fraudulent real estate transaction. According to Mr. Nocito, the Complaint "could easily double as a criminal indictment involving larceny and/or the fraudulent sale of real estate[.]" Furthermore, Mr. Nocito cites to the Debtor's Answer containing an allegation of a $458,000 "kickback" to Mr. Nocito raising additional, potentially criminal issues. Although Mr. Nocito acknowledges that the Complaint does not specifically assert that he engaged in any wrongdoing, he was nonetheless involved in the transaction which allegedly defrauded Mr. Wann. Furthermore, Mr. Nocito claims that he was advised by one of the Sosso brothers that Mr. Wann was considering contacting law enforcement to investigate the sale of the real estate. Accordingly, Mr. Nocito invoked the privilege in relation to questions regarding his purchase of the Property and Mr. Wann's dealings with the Sossos.

At the hearing, several documents relating to the transfer of the Property were provided to the Court. The documents were not offered as evidence for the truth of the matter asserted therein but rather to provide context to the questions asked at the deposition. The documents include a Settlement Statement dated July 27, 2007, purporting to show the sale of the Property to Mr. Nocito by Sosso Homes for the price of $3 million, resulting in cash to the seller in the amount of $1,276,705.40. The Settlement Statement identifies the settlement agent and lender. The Settlement Statement further indicates funds paid outside of closing in the amount of $71,310 to an entity referred to as Castle Mortgage. In addition, copies of a Contract for Sale and Appraisal Report were provided to the Court at the hearing. The Appraisal Report noted that the

9

Property was originally offered at $2,395,000, but was re-listed on June 15, 2007 at $2,995,000. A Copy of the Contract for Sale dated June 15, 2007, between Sosso Homes and Mr. Nocito shows a purchase price of $3 million. In addition to the allegations in the Complaint and Answer filed in the instant adversary proceeding, the contents of these documents undoubtedly raise a number of questions regarding the sale of the Property to Mr. Nocito and the individuals and entities involved in the transaction.

Based upon the record in this proceeding, the potential threat of criminal liability is evident. The Complaint is replete with allegations of fraud. The Answer suggests that Mr. Nocito received a "kickback" when he purchased the Property. The documents produced indicate, at the very least, a highly suspect transaction. Accordingly, this Court finds that the initial inquiry set forth in *American Cyanamid* is satisfied as there appears to be a conceivable possibility that the witness invoking the privilege could be linked to a crime.[4]

The next inquiry is whether answers to the questions asked could provide a potential link in the chain of evidence to prosecute the witness for a crime. As noted on the record at the hearing, Mr. Nocito was not blatantly asked whether he committed mortgage fraud or any crime in particular. However, that is not the standard. As set forth in *Hoffman*, the privilege is to be liberally construed. Answering seemingly innocent questions can result in injurious disclosure. As stated on the record at the hearing, a primary purpose of the questioning was to discover what happened to proceeds from the sale. While that may be relevant to the instant proceeding, the same could be equally relevant for a criminal investigation. Based upon the allegations in this

---

[4] At the hearing, the parties also addressed potentially applicable statutes of limitation. Even Mr. Wann did not suggest that the time had expired such that criminal liability is not a threat to Mr. Nocito and /or Mr. Mark Sosso.

case and the documents provided, answering any questions relating, in particular, to the circumstances surrounding the sale of the Property and Mr. Nocito's relationship with individuals and entities involved in the transaction could potentially link Mr. Nocito to a crime. As it is not perfectly clear that answering the questions could not possibly have the tendency to incriminate Mr. Nocito, this Court finds that Mr. Nocito met his burden. Invocation of the privilege is supported by the circumstances of this case.[5]

Mr. Mark Sosso

The Motion to Compel Mr. Mark Sosso asserts that he improperly refused to produce any documents and improperly refused to testify as to virtually all areas of questioning on the basis of his Fifth Amendment privilege against self-incrimination. In particular, the areas of questioning were characterized as follows:

> (1) the documents Mr. Mark Sosso reviewed in advance of his deposition;
> (2) all questions relating to the Property;
> (3) Mr. Mark Sosso's previous business dealings with Mr. Wann;
> (4) the nature of Mr. Wann's involvement or investment in the Property;
> (5) whether Mr. Mark Sosso's signature appeared on the mortgage note, mortgage or the contract for sale of the Property;
> (6) whether the Debtor signed the mortgage or executed the mortgage note; and
> (7) the sale and conveyance of the Property to Mr. Nocito.

As a result, Mr. Wann seeks an order compelling Mr. Mark Sosso to produce all documents that have been improperly withheld and to reappear and fully testify as to areas of questioning to which he incorrectly asserted his privilege applied.

---

[5] To the extent Mr. Wann asserts that Mr. Nocito waived his right to invoke the Fifth Amendment privilege as to any questions regarding documents which Mr. Nocito produced, the assertion is rejected. Mr. Wann did not provide any legal authority in support of this argument.

11

In response, Mr. Mark Sosso contends, and this Court agrees, that he properly invoked his Fifth Amendment privilege in response to questions at the deposition and requests for document production. Although Mr. Mark Sosso is not a party to the adversary proceeding, the Complaint alleges that he, along with others, participated in a loan agreement for which monies were not repaid to Mr. Wann. Furthermore, Mr. Mark Sosso contends that he need not produce the documents requested as the act of production is testimonial in nature and protected by the Fifth Amendment.

As stated with respect to Mr. Nocito, the potential for criminal liability is readily apparent based upon the record in this proceeding. Whether in his individual capacity or on behalf of Sosso Homes, Mr. Mark Sosso was potentially involved in not only the alleged fraud in obtaining funds from Mr. Wann but also in the subsequent sale of the Property to Mr. Nocito. Upon review of the questions asked at the deposition, it is not perfectly clear that answering the questions could not possibly have the tendency to incriminate Mr. Mark Sosso. This Court finds that Mr. Mark Sosso met his burden and invocation of the privilege is supported by the circumstances of this case.

The final matter before this Court is whether Mr. Mark Sosso properly withheld documents on the basis of his Fifth Amendment privilege. As a preliminary matter, the Court rejects the argument that the privilege was waived by the Consent Motion and entry of the Order dated December 4, 2012, which provided for production of information related to the sale, transfer, and purchase of the Property. The Court accepts the representation made by Counsel for Mr. Mark Sosso that he had not yet reviewed the documents at the time of the Consent Motion and Order and, therefore, did not have the opportunity to assess whether the privilege applied.

Upon subsequent review of the documents, the privilege was invoked. The Court now turns to whether the privilege applies.

According to the subpoena, Mr. Wann seeks "[a]ny and all information and documents relating to the loan transaction between Helen Sosso, Mark Sosso, Scott Sosso, Sosso Homes LLC and Melbourne Wann for the [Property]. Any and all information and documents relating to the sale and transfer of the Property to Joseph W. Nocito, Jr." Based upon this description, it is clear that acknowledging possession of such documents alone may be testimonial in nature and incriminating as the circumstances surrounding the Wann Note, Wann Mortgage, and subsequent transfer of the Property are highly suspect. To the extent the transactions were entered into by the Debtor and/or Sosso Homes, it is not a foregone conclusion that Mr. Mark Sosso possesses the requested information. Without consideration of the contents of the documents, which are not before this Court, it is clear from the record of this proceeding that, by surrendering documents fitting the description in the subpoena, Mr. Mark Sosso could conceivably incriminate himself simply by communicating information about the existence, custody, and authenticity of the documents. Accordingly, this Court finds the privilege was properly invoked. Production of said documents cannot be compelled under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

### III. Conclusion

For the foregoing reasons, this Court finds that Mr. Nocito and Mr. Mark Sosso properly invoked the Fifth Amendment privilege as to the questions asked at the depositions. Furthermore, Mr. Mark Sosso properly invoked the privilege in response to document requests. Accordingly, the Motions to Compel are denied. An appropriate order will be entered.

Date: May 7, 2013                                              __/s/ Carlota M. Böhm_____
                                                               Carlota M. Böhm
                                                               United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Office of the United States Trustee
Jeffrey J. Sikirica, Esq.
David W. Ross, Esq. and Erica L. Koehl, Esq.
James D. Newell, Esq. and Brian H. Simmons, Esq.
Jeffrey R. Lalama, Esq. and Francis C. Rapp, Jr., Esq.
Stanley Edward Levine, Esq. and Frederick D. Rapone, Jr., Esq.