IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| HELEN V. SOSSO, | : | Bankruptcy No. 12-21641-CMB |
| *Debtor* | : | Chapter 7 |
| | | |
| MELBOURNE WANN, | : | Adv. No. 12-2267-CMB |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| HELEN V. SOSSO, | : | |
| *Defendant* | : | |

## **MEMORANDUM OPINION**

The matter before the Court is the *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523* ("Complaint") filed by Plaintiff, Melbourne Wann ("Mr. Wann"), against the Debtor, Helen V. Sosso ("Debtor").[1] The Complaint asserts that the debt owed to Mr. Wann is not dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(6). For the reasons stated herein, this Court finds that the debt is dischargeable.

## **BACKGROUND AND PROCEDURAL HISTORY**

The above-captioned adversary proceeding was commenced on July 13, 2012. In the course of discovery, two motions to compel further deposition testimony were filed by Mr. Wann against non-parties, Joseph W. Nocito ("Mr. Nocito") and Mark Sosso, the Debtor's son. In those motions, Mr. Wann asserted that these individuals improperly invoked the Fifth Amendment

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

privilege against self-incrimination at their respective depositions. This Court denied the motions to compel for the reasons set forth in its Memorandum Opinion dated May 7, 2013.

Thereafter, trial was scheduled. The parties filed pretrial statements and a joint pretrial statement, containing a number of stipulated facts. Trial was held on January 13, 2014, and January 29, 2014. Testimony of the following four witnesses was heard at trial: Mr. Wann; the Debtor; Harry Hunt, a licensed appraiser in the State of Florida; and Marty Benson, a licensed real estate agent in the State of Florida.[2] Although the Debtor's two sons, Mark Sosso and Scott Sosso, and Mr. Nocito were served with subpoenas, counsel for each of them appeared on the first day of trial and represented that these individuals would invoke their Fifth Amendment privilege as to the areas upon which their testimony would be sought. Upon this representation, these individuals were not called to testify.[3]

Following trial, the parties were given the opportunity to file statements of issues, briefs, and reply briefs. As these documents have been filed, the matter is ripe for decision.

## FINDINGS OF FACT

Based upon the stipulated facts set forth in the parties' Joint Pretrial Statement, the testimony and evidence presented at trial, and this Court's assessment of the witnesses' credibility, the Court finds as set forth herein.

---

[2] Primarily, the relevant testimony was that of Mr. Wann and the Debtor. Although the parties' testimony contains points of disagreement, this Court does not believe that either party deliberately provided false testimony; rather, the conflicting testimony is more likely the result of differing perspectives, misunderstandings, and the passage of time.

[3] In Mr. Wann's post-trial brief, he asserts that it is appropriate for the Court to draw an adverse inference as a result of the invocation of the Fifth Amendment privilege by these individuals. The Court finds that the case law cited does not support this request as these individuals are not parties to this proceeding. Therefore, to the extent Mr. Wann requests that the Debtor be subject to an adverse inference due to the non-party witnesses' invocation of the privilege, this Court declines that request.

2

By way of background, the nature of the relationship between the Debtor and Mr. Wann is relevant to this proceeding. Mr. Wann is an experienced builder and developer who has been in the real estate development industry for approximately fifty years. The Debtor has been in the real estate business for approximately thirty-eight years and maintains a real estate broker's license in both Pennsylvania and Florida. The parties had been close friends for approximately thirty years. In the course of their friendship, they also did business together as the Debtor was the broker with whom Mr. Wann listed most of his properties in Pennsylvania. It is evident from the testimony that, based upon this long-standing friendship, a high level of trust existed between them at the time of the relevant transactions.

The dispute in this case results from the circumstances surrounding a project (the "Project") that began in 2005 to renovate a residential home located at 605 Kingfisher Lane, Longboat Key, Sarasota County, Florida (the "Property"). The idea and decision to take on the Project was that of Mark Sosso, the Debtor's son. *See* Transcript of 1/29/14, Doc. No. 107 ("Transcript II"), at 25. The Project was undertaken by Sosso Homes, LLC, a Florida limited liability company ("Sosso Homes"). From at least 2005 through 2007, the Debtor and her two sons, Mark Sosso and Scott Sosso, (collectively, the "Sossos") were identified as managers/members of Sosso Homes in certain annual reports filed with the Secretary of State; however, as discussed *infra*, the credible evidence establishes that Mark Sosso managed and controlled Sosso Homes. *See* Exhibits 21-23 and Transcript II, at 130.

In order to purchase the Property and fund the Project, Sosso Homes obtained a construction loan from Liberty Savings Bank. The Property was purchased by Sosso Homes on July 19, 2005, as evidenced by a deed recorded on July 22, 2005. In connection with the loan, a note in the amount of $1,620,000.00 to Liberty Savings Bank was executed by Mark Sosso, as

3

managing member of Sosso Homes. A mortgage, identifying Sosso Homes as the mortgagor and executed by Mark Sosso as the managing member of Sosso Homes, was recorded on July 22, 2005. Accordingly, the loan was secured by a first mortgage lien against the Property. The Debtor, Scott Sosso, and Mark Sosso were each guarantors of the loan obtained from Liberty Savings Bank.

Prior to closing on the loan from Liberty Savings Bank, the Debtor approached Mr. Wann to gauge his interest in the Project as he had previously shown an interest to invest in property in the area. Although the Debtor admits to this involvement, she contends that she did not intend to be responsible for "putting this deal together" as it involved her longtime friend and her son. *See* Transcript II, at 26. The Debtor advised Mr. Wann that an additional $100,000.00 was needed for the closing of the loan and completion of the Project. When Mr. Wann agreed to loan the necessary funds, his understanding of the agreement was that the Sossos were to own the Property and execute a note and mortgage in connection with his loan, which mortgage the Debtor would cause to be recorded following closing on the loan with Liberty Savings Bank. *See* Transcript of 1/13/14, Doc. No. 91 ("Transcript I"), at 37, 42-43, 160-61. Ultimately, however, this is not what occurred.

According to Mr. Wann, his understanding of the agreement, and consequently the manner in which a note and mortgage (hereinafter, the "Wann Note", Exhibit 3, and "Wann Mortgage", Exhibit 4) were prepared by his counsel, resulted from discussions with Debtor and, in particular, a document provided to him by Debtor. *See* Transcript I, at 159-61 and Exhibit 2. Despite the Debtor's testimony that she did not intend to negotiate the deal between her son and her friend, the Court finds it likely that the Debtor and Mr. Wann at least discussed the transaction as they were close friends. The Court finds the extent, formality, and nature of these

4

discussions, as well as the Debtor's role in the negotiations, to be uncertain. Based upon the evidence presented, it is not clear to the Court that the Debtor understood that Mr. Wann was relying almost exclusively upon their discussions to draft the terms of a note and mortgage. Although the Debtor's involvement to assist her son is obvious, especially as she contacted her friend, Mr. Wann, in the first place, the credible evidence establishes that this Project was the undertaking of Mark Sosso and Debtor's knowledge of the Project was derived predominantly from information he provided to her. Furthermore, although Mr. Wann was in contact with Debtor prior to the loan, he was also clearly in touch with Mark Sosso regarding the Project at this time. *See* Exhibit D.

Mr. Wann places particular emphasis on an unsigned commitment letter which he claims was provided to him by Debtor in June of 2005. Mr. Wann asserts that he relied upon the letter for the drafting of the Wann Note and Wann Mortgage. The letter dated June 17, 2005 ("June 17th Commitment Letter") was from Liberty Savings Bank to the Debtor, Scott Sosso, and Mark Sosso, identifying them as the borrowers. *See* Exhibit 2. Mr. Wann believed the commitment letter to be consistent with his understanding that the Sossos would personally own the Property despite the fact that the June 17th Commitment Letter does not explicitly address ownership by the Sossos. *See* Transcript I, at 31-34, 36. Very little time was provided to memorialize an agreement, and Mr. Wann directed his attorney to prepare the Wann Note and Wann Mortgage consistent with his understanding of the agreement and based upon the June 17th Commitment Letter.

The Court notes that Mr. Wann did receive additional documentation regarding the Project prior to making the loan. By way of a facsimile on or around June 21, 2005, Mark Sosso sent Mr. Wann a document identified as a "Cost Breakdown Sheet" for the Project. *See* Exhibit

5

D. Significantly, the document identifies the Property by address and identifies the owner as Sosso Homes, LLC. When asked about his reaction to this information, Mr. Wann testified that he "wouldn't have even picked up on that." *See* Transcript I, at 157-58. While there was clearly a misunderstanding as to ownership of the Property, it does not appear that the ownership of the Property was purposefully concealed from Mr. Wann by the Debtor.

Ultimately, pursuant to the Wann Note, Mr. Wann loaned the sum of $100,000.00 to the Debtor, Sosso Homes, Mark Sosso and Scott Sosso. Under the terms of the Wann Note, Sosso Homes, the Debtor, Mark Sosso, and Scott Sosso were to be jointly and severally liable, and the Sossos were identified as the mortgagors in the Wann Mortgage. Based upon the Wann Note, Mr. Wann would be entitled to the repayment of his $100,000.00 initial investment, plus interest, and twenty-five percent of the proceeds from the sale of the Property. Notwithstanding the fact that Mr. Wann was making the loan to the Sossos under the terms of the Wann Note, only Mark Sosso personally met with Mr. Wann to execute the documents.

On or around June 28, 2005, Mark Sosso met with Mr. Wann in his office in Pittsburgh. At that time, Mark Sosso executed the Wann Note and Wann Mortgage in his individual capacity and, with respect to the Wann Note, as the representative of Sosso Homes, LLC, as well. Mr. Wann provided the $100,000.00 check to Mark Sosso along with the Wann Note and Wann Mortgage, without said documents being fully executed. Mr. Wann asserts that Mark Sosso was to provide the documents to Debtor. Although Mr. Wann testified that the Debtor never advised him that she did not receive a copy of these documents, there is no evidence that he ever attempted to verify receipt of the documents by Debtor or Scott Sosso. *See* Transcript I, at 53,

6

150-54. Neither the Debtor nor Scott Sosso signed either document.[4] As a result of the foregoing, the Wann Note and Wann Mortgage were never fully executed, and the Wann Mortgage, which did not properly reflect ownership of the Property, was not recorded. Although Mr. Wann testified that he relied upon the Debtor in making the loan and would not have made the loan to either of the Debtor's sons individually or to Sosso Homes, Mr. Wann's conduct in this transaction does not support his alleged mistrust of the Debtor's sons and primary reliance on Debtor.

Following Mark Sosso's execution of the Wann Note and Wann Mortgage, a second commitment letter dated July 19, 2005 ("July 19th Commitment Letter") was issued by Liberty Savings Bank to the Debtor and her two sons. *See* Exhibit 30. This letter is dated approximately one month later than the letter upon which Mr. Wann relied to draft his note and mortgage. Unlike the June 17th Commitment Letter, the July 19th Commitment Letter identifies the borrower as Sosso Homes and the guarantors as the Sossos, individually. Significantly, the Wann Note and Wann Mortgage were drafted and executed by Mark Sosso prior to the date of this second commitment letter. Mr. Wann did not learn of the July 19th letter until he obtained it in the course of discovery in this proceeding.

Notwithstanding the foregoing, it was Debtor's understanding that Mr. Wann *did* loan funds for the Project and that he *had* an interest in the Property. *See* Transcript II, at 66. From June 2005 through 2007, Mr. Wann asserts that he likely spoke with the Debtor and Mark Sosso about the Project monthly. However, it is clear from the record that Mark Sosso was in charge of the Project. The evidence shows that Mr. Wann consistently relied upon Mark Sosso to provide him with updates, and Mr. Wann acknowledged that Mark Sosso controlled Sosso Homes. *See*

---

[4] The Debtor testified that, had she been presented with the documents, she would have signed them. *See* Transcript II, at 39-41. The Court finds this testimony to be credible and further notes that the Debtor was a guarantor on the loan for $1,620,000.00 from Liberty Savings Bank.

7

Transcript I, at 50-52 and Exhibits 5 & 64. The evidence further indicates that it was Mark Sosso who was keeping track of the amount owed to Mr. Wann. *See* Transcript I, at 111-112 and Exhibit 14. In addition, following the commencement of Debtor's bankruptcy case, Mr. Wann contacted Mark Sosso in order to obtain the documents he would need to "write off" the debt. Of the numerous documents introduced into evidence, Mark Sosso consistently signed on behalf of Sosso Homes. Thus, while Scott Sosso and the Debtor may have been identified as members of Sosso Homes in certain annual reports filed with the Secretary of State, there is no credible evidence of their involvement in managing Sosso Homes or this particular Project.

Ultimately, the Property was sold by Sosso Homes on July 27, 2007. The circumstances surrounding the sale, however, are highly suspect. On June 15, 2007, Sosso Homes and Mr. Nocito entered into a contract for sale of the Property for the purchase price of $3,000,000.00, which contract was executed by Mark Sosso, on behalf of Sosso Homes. Based upon the credible evidence, Mark Sosso negotiated the sale and prepared the contract related thereto. *See* Transcript II, at 96. In fact, even the listing agent for the Property, Marty Benson, was unaware of the contract until shortly before closing.

Marty Benson was an independent contractor working for Prudential Palms Realty ("Prudential Palms").[5] Upon his review of the settlement statement, Mr. Benson learned that no amount was provided for his commission. Although he first directed his inquiry to Mark Sosso, when he received an unsatisfactory response, he approached Debtor for an answer prior to the closing due to her management role at Prudential Palms. Both Mark Sosso and the Debtor then met with Mr. Benson at which time Mark Sosso informed Mr. Benson that, despite the

---

[5] Between 2005 and 2007, the Property was listed for sale by Prudential Palms, an entity in which Debtor described herself as having "small non-stock." *See* Transcript II, at 13, 68-69. *But see* Transcript II, at 147. Although there is conflicting testimony regarding ownership and the identity of the broker of record for Prudential Palms during this time, it is clear that both the Debtor and Scott Sosso had management type roles. *See* Transcript I, at 62. *See also* Transcript II, at 12-13, 147, 229, 231.

appearance on the settlement statement of a profit, the money simply did not exist. Thus, the Debtor was aware around the time of closing, that the settlement statement was inconsistent with Mark Sosso's claim that there was no profit on the sale of the Property. Nonetheless, she believed her son. The actual details of the transaction between Mark Sosso, on behalf of Sosso Homes, and Mr. Nocito were not developed on the record and are not relevant to this proceeding.

Shortly before closing, Mr. Wann learned of the sale when Debtor approached him inquiring as to whether Mark Sosso informed him of the sale.[6] Consistent with the information she received from Mark Sosso, Debtor advised Mr. Wann that the Property was being sold at cost; thus, Mr. Wann understood he was to receive only the principal and interest as there would be no profit. *See* Transcript II, at 34-35; Transcript I, at 80. Following the closing, apparently in response to Mr. Wann's inquiries, Mark Sosso sent a facsimile to Mr. Wann providing a profit and loss statement for the Project. *See* Exhibit 6.[7] Mark Sosso advised therein that there was no profit on the sale of the Property, and the profit and loss statement indicated a sale price of approximately $2,023,152.53. *See* Transcript I, at 84-85. Mark Sosso further advised that Mr. Wann would receive a check for the monies owed to him in a matter of days. That check was not provided to Mr. Wann.

Mark Sosso informed Debtor that he discovered a problem; he failed to include Mr. Wann's loan in the calculation of costs to determine the amount that would be received from the sale to Mr. Nocito. *See* Transcript II, at 103. The Debtor suggested that they speak with Mr. Nocito in an attempt to obtain the funds for Mr. Wann. *See id.* That attempt was unsuccessful,

---

[6] Curiously, although Mr. Wann believed that he held a mortgage on the Property at that time, he did not question how closing could occur without his release of the mortgage. *See* Transcript I, at 79-80.

[7] Significantly, the facsimile from Mark provides, in part, "*I* made a deal with Joe [Nocito] to buy the house and make get [sic] me and you our money back. *I* had no choice but to make this deal. *I* was behind 2 payments with the bank and had no where else to turn." (Emphasis added.) The facsimile supports Debtor's testimony that Mark Sosso was the individual in control of the Project and ultimately the individual responsible for negotiating the sale to Mr. Nocito.

and Mr. Wann did not receive payment from the proceeds of the sale. Instead, he was informed that Mark Sosso forgot to include his loan in the calculation of costs.

Thereafter, some attempt was made to pay at least a portion of the obligation to Mr. Wann. On October 16, 2007, Sosso Homes issued a $10,000 check payable to Wann Corporation signed by Mark Sosso and drawn on Sosso Homes' account. *See* Exhibit J. Mr. Wann credited the amount against the obligation owed under the Wann Note. Subsequently, on May 12, 2009, Debtor sent a handwritten note to Mr. Wann along with a $1,200.00 check drawn on an account held by Debtor, Scott Sosso, and Mark Sosso, payable to Mr. Wann, which amount he credited against the obligation owed under the Wann Note. *See* Exhibits 8 and 9. The handwritten note indicated that Debtor would pay the obligation herself in varying amounts. According to Debtor, she sent the payment and agreed to pay the obligation so that Mr. Wann would not take any action to collect from Mark Sosso as he had no ability to pay. *See* Transcript II, at 110.

Although there had been promises to pay the debt, when Debtor filed her bankruptcy case in 2012, Mr. Wann decided that it was time to "write off" the debt. In order to do so, he needed the appropriate documentation regarding the transaction, which he sought from Mark Sosso. *See* Transcript I, at 83-84. In response, Mark Sosso provided Mr. Wann with certain documents, including the settlement statement, which Mr. Wann had never seen before. Mr. Wann discovered that the information relayed to him at the time of the sale of the Property in 2007 was entirely inconsistent with the documentation he received in 2012. Pursuant to the settlement statement, which was executed by Mark Sosso, on behalf of Sosso Homes, the seller of the Property received the sum of $1,276,705.40 from the sale, as the Property was sold to Mr. Nocito for $3,000,000.00. *See* Exhibit 10. The deed from Sosso Homes to Mr. Nocito was executed by

Mark Sosso, as managing member of Sosso Homes. The revelation provided by the documents led to the filing of instant proceeding.

Based on the foregoing, this Court considers whether the debt is dischargeable under §523(a)(2)(A) or (a)(6) of the Bankruptcy Code.

## DISCUSSION

As a preliminary matter, the Court will address the Debtor's contention that Mr. Wann's underlying causes of action, for breach of contract and/or any related tort action alleging fraud, are barred by the applicable statutes of limitation. The Complaint is a request to determine dischargeability under 11 U.S.C. §523. Therein, Mr. Wann does not plead the underlying causes of action; instead, the Complaint assumes the existence of the underlying debt as follows:

> The Debtor does not and has not disputed the fact that the Plaintiff has a valid claim against the Debtor. In fact the Debtor identified the Plaintiff on Schedule F of her Bankruptcy Schedules as holding an unliquidated, unsecured claim in the amount of $150,000.00. The Plaintiff and the Debtor, however, disagree as to the amount of the Plaintiff's allowed claim.

*See* Complaint, at ¶8. Although the parties stipulate that Mr. Wann has a valid unsecured claim against the Debtor, the parties disagree as to the basis for said claim. Mr. Wann asserts that the claim is derived from the loan made pursuant to the Wann Note in 2005 while the Debtor contends that the claim arises as a result of her subsequent promise to pay Mr. Wann following the sale of the Property in order to dissuade Mr. Wann from taking action to collect against her son. Because the underlying causes of action were not pled in the Complaint, neither those causes of action nor the corresponding statutes of limitation were properly raised before this

Court. The Complaint seeks a determination of nondischargeability of an undisputed debt. Therefore, dischargeability of the asserted debt will be resolved herein.[8]

The statutory exceptions to discharge set forth in §523 must be viewed in light of the underlying policy of the Bankruptcy Code, i.e. the goal of providing a fresh start, and "are generally construed 'narrowly against the creditor and in favor of the debtor.'" *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002) (quoting *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993)). The party opposing discharge has the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In light of these standards, the Court will address the applicability of §523(a)(2)(A) and (a)(6) to the facts of this case.[9]

## 11 U.S.C. §523(a)(2)(A)

Beginning with §523(a)(2)(A), a debt "for money . . . to the extent obtained, by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" will not be discharged. *See* 11 U.S.C. §523(a)(2)(A).

---

[8] The Court notes that Mr. Wann is likely barred by the statutes of limitation regarding any debt arising from the transaction in 2005 and subsequent sale in 2007. Given Mr. Wann's background and sophistication, Mr. Wann's failure to investigate the status of the Wann Note and Wann Mortgage is inexplicable following the sale in 2007. Nonetheless, to the extent the Debtor raises the statutes of limitation and similarly laches as defenses to the Complaint to determine dischargeability, the Court need not resolve these arguments as the Court finds in Debtor's favor regarding the dischargeability of the debt.

[9] As previously stated, the Complaint alleges nondischargeability of a debt under §523. However, in Mr. Wann's post-trial brief, he asserts that the Debtor failed to comply with her obligation of full and complete disclosure as required for discharge. In support, Mr. Wann cites to *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992). In that case, the Court of Appeals for the Third Circuit analyzed an objection to discharge pursuant to §727(a)(3). No such objection was made in Mr. Wann's Complaint. Also in Mr. Wann's post-trial brief, he requests that the Court deny the Debtor's discharge under §727(a)(4), suggesting that the Court may make such a finding *sua sponte* as was done by the court in *Ayoub v. Abdallah (In re Abdallah)*, No. 5-11-ap-00040-JJT, 2012 WL 631845, 2012 Bankr. LEXIS 724 (Bankr.M.D.Pa. Feb. 27, 2012). The Court finds the circumstances present in *Abdallah* distinguishable from this case, specifically as the complaint in *Abdallah* raised other objections to discharge under §727 and as that court determined the issue was tried by the consent of the parties. This Court will not consider the objections to discharge raised after trial.

Thus, as a threshold matter, the debt at issue must have resulted from a debtor's fraudulent conduct. *See Jones v. Dressler* (*In re Dressler*), 431 B.R. 127, 131 (Bankr.W.D.Pa.2010). To establish that a debt was obtained by a false representation under §523(a)(2)(A), the plaintiff must prove that the debtor made a representation, knowing it to be false at that time, with the intent and purpose of deceiving plaintiff, who justifiably relied upon said representation and sustained a loss as the proximate result. *Id.* at 130. Similarly, the same must be proven for the purpose of establishing false pretenses, except that the misrepresentation is implied or rather is a product of debtor's conduct which fostered a false impression. *Id.* at 130. To the extent some courts treat actual fraud as a broader concept under the statute, the debtor's intent to defraud must nonetheless be established. *Id.* at 130-31. Thus, regardless of whether a plaintiff alleges false pretenses, false representation or actual fraud, a plaintiff must prove by a preponderance of the evidence that the debtor possessed the intent to defraud. *Id*. at 130-31. *See also Gaussa v. Crawford* (*In re Crawford*), 476 B.R. 890, 895 (Bankr.W.D.Pa. 2012). Establishing intent of the debtor is a difficult burden.

In the Complaint, Mr. Wann alleged three misrepresentations by Debtor: (1) Debtor's intention to execute the Wann Note and Wann Mortgage; (2) Debtor's intention to record the Wann Mortgage or cause said mortgage to be recorded; and (3) payment to Mr. Wann upon sale of the Property. In addition, although not contained within the Complaint, Mr. Wann asserts that Debtor intentionally misrepresented who would own the Property. While maintaining that this is an attempt by Mr. Wann to amend his Complaint after trial, the Debtor contends that Mr. Wann nonetheless fails to meet his burden on this point. This Court agrees that Mr. Wann failed to meet his burden with respect to all four alleged misrepresentations.

Beginning with the allegation regarding misrepresentation of ownership, Mr. Wann asserts that he relied upon representations by the Debtor and the June 17th Commitment Letter for the drafting of the Wann Note and Wann Mortgage. To the extent Mr. Wann alleges that the Debtor intentionally misrepresented the ownership of the Property, even had she provided Mr. Wann with incorrect information, there is no evidence of intent to defraud. While the Debtor and Mr. Wann likely discussed the transaction, this Project was truly the undertaking of Mark Sosso and Debtor's knowledge of the Project appears to have come primarily from Mark Sosso. In fact, the evidence demonstrates throughout the course of the Project that the Debtor's role was often to relay information between Mark Sosso and Mr. Wann. It was Mark Sosso who negotiated with Liberty Savings Bank, and Mark Sosso executed the note and mortgage in connection with that loan on behalf of Sosso Homes. Ultimately, it was also Mark Sosso who met with Mr. Wann to execute the Wann Note and Wann Mortgage. Curiously, if Mr. Wann was negotiating the agreement exclusively with the Debtor, then it would follow that he would attempt to verify with her that the Wann Note and Wann Mortgage were consistent with the terms of the agreement. Instead, Mr. Wann provided the documents only to Mark Sosso and never attempted to confirm receipt by the Debtor. Notwithstanding the foregoing, Mr. Wann alleges that he relied upon Debtor's alleged misrepresentations regarding ownership. There is insufficient evidence that the Debtor intentionally misrepresented ownership of the Property to Mr. Wann with the intent to deceive him in order to obtain a loan for the Project.

Furthermore, with respect to Mr. Wann's reliance upon the June 17th Commitment Letter, that letter was the document in existence at the time the Wann Note and Wann Mortgage were drafted. The Sossos executed that document only days before Mark Sosso met with Mr. Wann to sign the Wann Note and Wan Mortgage, and there is no evidence that it was

14

fraudulently provided to Mr. Wann by the Debtor. *See* Exhibit 29. The fact that the commitment letter was amended less than one month after Mark Sosso executed the Wann Note and Wann Mortgage does not establish an attempt to misrepresent ownership by providing Mr. Wann with the June 17th Commitment Letter. Furthermore, the July 19th Commitment Letter could not have been provided to Mr. Wann to assist him in preparing the Wann Note and Wann Mortgage as it did not exist until after that time. Although the facts certainly raise the question of why Mark Sosso, the only one of the Sossos who read and executed the Wann Note and Wann Mortgage, did not advise Mr. Wann of the July 19th Commitment Letter when it was issued, the circumstances do not support the conclusion that, Debtor, assuming she sent the June 17th Commitment Letter to Mr. Wann, misrepresented the true nature of the loan from Liberty Savings Bank and/or the ownership of the Property.

With respect to Mr. Wann's contention that the Debtor misrepresented her intention to execute a note and mortgage and subsequently cause said mortgage to be recorded, this Court does not doubt that, in the course of discussions with Mr. Wann, Debtor represented her willingness to sign a note and/or mortgage related to the loan as she became a guarantor of the loan from Liberty Savings Bank. However, there is no evidence that the Debtor ever received the Wann Note and Wann Mortgage, and Mr. Wann did not attempt to verify receipt of these documents by the Debtor. Accordingly, assuming the Debtor did promise to do as Mr. Wann alleges, she never had the opportunity to fulfill her promise. The Court finds no misrepresentation is apparent on these facts.

With respect to any representation made by the Debtor to Mr. Wann regarding payment of the obligation upon the sale of the Property, the evidence indicates that the Debtor believed this to be true. In fact, she approached Mr. Wann to inform him of the sale and advise him that

15

he would be paid soon. Based upon the credible evidence, this is the outcome that both the Debtor and Mr. Wann anticipated at the time the Project commenced. The Debtor could not have foreseen that Mark Sosso would either negotiate a sale with Mr. Nocito that did not account for Mr. Wann's loan or that Mark Sosso would intentionally deprive Mr. Wann of the funds owed to him.

Based on the foregoing, Mr. Wann failed to prove that the Debtor possessed the requisite intent to defraud for the purpose of establishing nondischargeability under §523(a)(2)(A).[10]

## 11 U.S.C. §523(a)(6)

Pursuant to 11 U.S.C. §523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. This Court has previously set forth the standard under this provision as follows:

> As to the willfulness component, §523(a)(6) requires more than simply a deliberate or intentional act causing injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The actor must have either "purposefully inflicted the injury or acted with substantial certainty that injury would result." *Conte v. Gautam* (*In re Conte*), 33 F.3d 303, 305 (3d Cir.1994). As to the malice requirement, the act resulting in the injury must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *See Wymard v. Ali* (*In re Ali*), 321 B.R. 685, 693 (Bankr.W.D.Pa.2005) (citing 4 Collier on Bankruptcy ¶ 523.12[1] at 523–91).

---

[10] In addition to establishing intend to defraud, the burden was also on Mr. Wann to demonstrate his justifiable reliance upon Debtor's alleged misrepresentations and that said misrepresentations caused his harm. The Court need not reach these elements of §523(a)(2)(A) as Mr. Wann failed to establish that Debtor made misrepresentations, whether stated or implied, with intent to defraud. The Court notes, however, that Mr. Wann fails to sufficiently address how the Debtor's alleged misrepresentations resulted in his failure to obtain a fully executed note and mortgage. Mr. Wann relied on Mark Sosso to deliver these documents, and Debtor had no opportunity to sign or record said documents. Furthermore, the Wann Note and Wann Mortgage would not have been fully executed notwithstanding Debtor's failure to sign them as Scott Sosso did not sign either document. In addition, Debtor raised significant questions regarding whether reliance by Mr. Wann was justifiable under the statute. Mr. Wann's alleged reliance on an unsigned commitment letter and discussions with the Debtor and/or her sons to make such a loan seems odd in light of Mr. Wann's sophistication and background as set forth on the record.

16

*See Enterprise Bank v. Hannan* (*In re Hannan*), 477 B.R. 603, 612 (Bankr.W.D.Pa. 2012). The Complaint does not clearly identify what particular conduct by the Debtor was willful and malicious under the terms of the statute. As developed at trial and set forth in his brief, it is Mr. Wann's position that the Debtor, who was aware of his interest in the Property, knowingly and intentionally allowed the Property to be sold without any payments being made to Mr. Wann with the substantial certainty that injury would result.

For the apparent purpose of establishing the Debtor's knowledge and control over the sale to Mr. Nocito, Mr. Wann describes the Debtor as "the Managing Member of Sosso Homes…, the owner or purported owner of Prudential Palms Realty…, and an owner of Americo Title, LLC…" *See* Plaintiff's Brief, Doc. No. 113, at 8. The Court notes that there was contradictory testimony with respect to Debtor's role and/or interest in these entities. While the Court does not doubt that the testimony of Mr. Wann and Mr. Benson was truthful on these points, their testimony appears to have been based solely on their perception of Debtor's interest and/or roles and not necessarily upon evidence of actual ownership. First, with respect to Americo Title, LLC ("Americo"), that title company was identified as the settlement agent with respect to the sale of the Property to Mr. Nocito. According to Mr. Benson, Americo was an in-house title company for Prudential Palms and the agents were encouraged to utilize Americo to close their transactions. *See* Transcript II, at 149-50. The extent of any interest Debtor may have had in Americo was not clear on the record. Second, while it is clear from Mr. Benson's testimony that the Debtor had at least a management type role at Prudential Palms, the extent of

17

the Debtor's ownership in the company is not clear on the record.[11] Finally, the evidence establishes that with respect to Sosso Homes, Mark Sosso controlled that company. Regardless of any interest the Debtor may have held in one or more of these entities, Mr. Wann failed to establish the Debtor's involvement in and control over the transaction at issue such that this Court could find that it was either Debtor's intention or a substantial certainty that Mr. Wann's injury would result from her actions.

Despite Mr. Wann's contentions, based upon the evidence presented, it was not Debtor, but rather Mark Sosso, whose conduct caused his harm. Mark Sosso personally met with Mr. Wann in 2005 to execute the Wann Note and Wann Mortgage and obtain funds for the Project. Mark Sosso is the only one who specifically knew the terms of the loan and affirmatively represented his agreement to those terms. Subsequently, Mark Sosso reached an agreement to sell the Property on behalf of Sosso Homes to Mr. Nocito in 2007, and there is no credible evidence upon which to conclude that Debtor was involved in negotiating the agreement. Following the negotiation of the contract for sale, Mark Sosso represented to Mr. Wann, Mr. Benson, and the Debtor that there would be no profit on the sale. The Court notes the highly suspicious circumstances surrounding the sale of the Property to Mr. Nocito, and an extensive amount of evidence was presented regarding the transaction. However, for purposes of this proceeding, Mr. Wann must prove "willful and malicious injury by the debtor" under §523(a)(6). As it was Mark Sosso who controlled Sosso Homes, the Court finds that much of the evidence was not relevant. While the Court acknowledges that, based upon the evidence presented, Mr.

---

[11] By way of a footnote in his post-trial brief and an attached exhibit, Mr. Wann sought to supplement the record to provide additional evidence that the Debtor was the face of Prudential Palms. First, this Court declines to take judicial notice of the exhibit. Second, even had these documents been made part of the record, they do not involve the transaction at issue and would not have swayed the Court's decision.

Wann was likely defrauded by certain individuals involved in the transaction, Mr. Wann did not meet his burden with respect to the Debtor.

## CONCLUSION

The Court notes that Mr. Wann's conduct was uncharacteristically informal for such a significant loan. This informality is likely the result of a number of factors, including the close friendship between Mr. Wann and the Debtor and the short timeframe available to prepare the Wann Note and Wann Mortgage. As the events transpired in this case, it is not surprising that misunderstandings resulted between Mr. Wann and the Debtor. Under other circumstances, it is difficult to believe that Mr. Wann would have made such a loan in the first place and subsequently neglect to take action following the warning signs to him around the time of the sale in 2007. The record in this proceeding reveals suspicious circumstances surrounding the transaction and indicates that Mr. Wann may be the victim of fraud. However, the focus of this proceeding is the conduct of the Debtor, and this Court finds that Mr. Wann failed to meet his burden under 11 U.S.C. §523(a)(2)(A) and (a)(6). Therefore, the debt owed is dischargeable. An appropriate Order will be entered consistent with this Memorandum Opinion.

DATE: August 25, 2014

  /s/ Carlota M. Böhm  
Carlota M. Böhm  
United States Bankruptcy Judge

**MAIL TO:**
Office of the United States Trustee
David W. Ross, Esq. and Erica L. Koehl, Esq.
Stanley Edward Levine, Esq. and Frederick D. Rapone, Jr., Esq.